UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANNIE L.B. RICHARDSON,                                          CIVIL ACTION
INDIVIDUALLY AND ON BEHALF
OF THE MINOR CHILD, G.R.

VERSUS                                                                    NO: 08-111

TANGIPAHOA PARISH SCHOOL                          SECTION: "A" (3)
BOARD, ET AL.

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(6) for Failure to State a Claim on Which Relief May Be Granted (Rec. Doc. 6)[1]** filed by defendants the Tangipahoa Parish School Board, Jo Ann Whitmer, in her individual and official capacity as principal of Natalbany Elementary School, and Crystal Clark and Sandra Moran, in their individual capacity and their official capacity as teachers at Natalbany Elementary School.

---

[1] The Court notes that Defendants' motion and supporting memorandum do not brief the Court on Plaintiff's state law claims. Therefore, the Court will construe Defendant's Motion to Dismiss (Rec. Doc. 6) as solely pertaining to Plaintiff's claims under federal law.

Plaintiff, Annie Richardson, individually and on behalf of the minor child G.R., opposes the motion. The motion, set for hearing on March 19, 2008, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **GRANTED**.

## I.   BACKGROUND

The instant action arises out of acts which allegedly occurred at Natalbany Elementary School in Tangipahoa Parish during the 2007 school year.  Plaintiff alleges the facts as follows. During the 2007 school year, G.R., a minor, was a student enrolled at Natalbany Elementary School. (Compl. ¶ 15).  During that time, Defendants Clark and Moran were teachers employed by the Tangipahoa Parish School Board and Natalbany Elementary School.  (*Id.* at ¶ 16).

According to Plaintiff, on or about May 3, 2007, G.R. revealed to Richardson that he had been sexually assaulted and/or molested by student G.J. on a weekly basis since January 2007.  (*Id.* at ¶ 17).  Specifically, Plaintiff contends that "G.J. would force the minor child, G.R. to perform oral sex upon him in an area of the playground during recess."  (*Id.* at ¶ 23).  G.R. further stated to Richardson that "at different times" he informed Clark and Moran that he was being sexually assaulted and/or molested by G.J.  (*Id.* at ¶ 18).  A complaint was made to the Tangipahoa Parish Sheriff's Office on May 4, 2007.  (*Id.* at ¶ 19).  Richardson avers that the Principal and School Board were aware of the "improper actions" of G.J., "yet did nothing to remedy the situation." (*Id.* at ¶ 20). In this vein, "[u]pon information and belief the Principal and School Board had notice of the student's assaults upon G.R. through the information made available to defendants, Clark and Moran."  (*Id.* at ¶ 21).  Plaintiff charges that despite this notice, the Principal and School Board "took no action of any kind to protect the students under their care, custody and control and instead

allowed and condoned the indecent actions of the student."  (*Id.*)  Plaintiff asserts that Principal Whitmer and the school employees "allowed the student, G.J. to assault and molest, [sic] G.R. during recess."  (*Id.* at ¶ 22).

As a result of the foregoing, Plaintiff filed the instant lawsuit under 42 U.S.C. § 1983, alleging "deliberate indifference" on the part of Defendants to the constitutional rights of G.R., which resulted in G.R. being deprived of liberty without due process of law in violation of the Fourteenth Amendment.  (*Id.* at ¶¶ 1, 25).  In addition, Plaintiff asserts violations of "rights secured by the Fourteenth Amendment to the United States Constitution not to be subjected to sexual abuse."  (*Id.* at ¶ 28).  Plaintiff avers that the deprivations and violations were carried out pursuant to the rules, regulations, customs, policies, and practices of defendants in their official capacities, acting under the color of state law.  (*Id.* at ¶ 2).  Finally, Plaintiff claims that Defendants are liable under the laws and jurisprudence of the state of Louisiana for negligence and/or gross negligence.  (*Id.* at ¶ 36).

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  (Rec. Doc. 6). Specifically, Defendants urge dismissal on the following grounds: (1) The Due Process Clause is not intended to afford protection to students from harm by third parties, including other students; (2) the plaintiffs have not stated a claim against the school board because the plaintiffs have not alleged that the school board has a policy which tolerates sexual abuse or harassment; and (3) the plaintiffs have failed to state a claim against the school board employees under Section 1983.  (Def. Mem. in Supp. p. 4, 6, 8).  Plaintiff opposes Defendants' motion.  (Rec. Doc. 8).

3

On April 25, 2008, the Court ordered that Plaintiff provide the date of birth for the minor child G.R. so that the Court could more fully consider the instant motion. (Rec. Doc. 9). Plaintiff timely responded that G.R.'s date of birth is October 27, 1996. (Rec. Doc. 10).

## II.   STANDARD OF REVIEW

Motions to dismiss are viewed with disfavor and are rarely granted. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005) (citing *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000)). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true those well-pleaded factual allegations in the complaint. *Id.* (citing *C.C. Port., Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir. 1995)). "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper. *Id.* (quoting *C.C. Port., Ltd.*, 61 F.3d at 289). It must appear beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

## III.   LAW AND ANALYSIS

Defendants urge that "[j]urisprudence is clear that the Constitution does not afford protection to students from harm by third persons, including other students." (Def. Mem. in Supp. p. 9). As such, any allegations that one student caused harm to G.R. "do not amount to a constitutional violation." (*Id.*) Under the facts alleged in the Complaint, the Court agrees.

"To state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured by the constitution of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Priester v. Lowndes County*, 354 F.3d 414,

4

420 (5th Cir. 2004) (citing *McKinney v. Irving Ind. Sch. Dist.*, 309 F.3d 308 (5th Cir. 2002)).

The Complaint reflects that Plaintiff asserts her son's Fourteenth Amendment substantive due process right to be free from state deprivation of bodily integrity liberty interest.  In considering Plaintiff's arguments, the Court notes that the Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors.  *McKinney*, 309 F.3d at 312 (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).  However, this general rule is not absolute: "It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."  *Id.* at 313 (quoting *DeShaney*, 489 U.S. at 198, 109 S.Ct. 998).  The Fifth Circuit has clearly held that absent those "certain limited circumstances," substantive due process "does not confer an entitlement to governmental aid as may be necessary to realize the advantages of liberty guaranteed by the Clause."  *Priester*, 354 F.3d at 421 (quoting *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995)).  Consequently, Plaintiff must properly allege that the alleged harm to G.R. falls within one of those "certain limited circumstances."

### A.    The Special Relationship Exception

In *Walton v. Alexander*, the Fifth Circuit recognized the "special relationship" exception, which arises when the "special relationship" between the individual and the state imposes upon the state a constitutional duty to protect that individual from known threats of harm by private actors.  *McKinney*, 309 F.3d at 313 (citing *Walton*, 44 F.3d at 1299).  The Fifth Circuit added that this exception "only arises when a person is involuntarily confined or otherwise restrained against his

will pursuant to a governmental order or by the affirmative exercise of state power." *Id.* (quoting *Walton*, 44 F.3d at 1299).

Courts have discussed the applicability of the special relationship exception to the school setting. Plaintiff cites *Johnson v. Dallas Independent School District*[2], particularly the Court's discussion comparing the purported "custodial setting" of a public school under compulsory attendance laws to state welfare services, which the Supreme Court found did not create a "special relationship" in *DeShaney*.[3]  38 F.3d 198, 203 n. 7 (5th Cir. 1994).  Plaintiff then proceeds to quote portions of the dissenting opinion.

In *Johnson*, the Fifth Circuit expressly recognized that "a persuasive argument can be made for applying a *DeShaney* 'special relationship' in some measure to public school students who are forced by compulsory education laws to attend school . . . ." *Id.*  However, Plaintiff did not cite, nor

---

[2]Plaintiff's memorandum refers to Judge Goldberg's "dissent" in *Johnson*.  (*See* Pla. Mem. in Opp. p. 6).  The Court notes that the quoted statement is found in the majority opinion.

[3]Specifically, Plaintiff cites the following:

The fact is, however, that the state's custody of children in public schools is more comprehensive than is its intervention in family affairs via noncustodial welfare services.  Such services often involve sporadic, intermittent contact with clients on a schedule that may not be predictable.  Social workers provide valuable services to their un-institutionalized clients, but they cannot and do not tend to them continuously nor do they necessarily rely upon state-managed facilities as the locus of care.  Schools, however, take care of children day after day for years *in public facilities*.  Schools may be said to control children's environments to the same or even greater degree than state-sponsored foster care services, which have been held, post-*DeShaney*, to bear affirmative obligations to their client children.

*Johnson*, 38 F.3d at 203 n. 7 (citing *K.H. ex rel. Murphy  v. Morgan*, 914 F.2d 846 (7th Cir. 1990); *Yvonne L. v. New Mexico Dept. of Human Servs.*, 959 F.2d 883, 893 (10th Cir. 1992)) (emphasis in original).

could the Court locate, a single opinion in which the Fifth Circuit, or a district court within this circuit, found such a relationship to exist under facts similar to those before the Court in the instant matter.

To the contrary, in *Doe v. Hillsboro Independent School District*, the Fifth Circuit "decline[d] to hold that compulsory attendance laws alone create a special relationship giving rise to a constitutionally rooted duty of school officials to protect students from private actors." 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc). The court "join[ed] every circuit court that has considered the issue in holding that compulsory school attendance . . . does not create the custodial relationship envisioned by *DeShaney*." *Id.* In support of its holding, the Fifth Circuit explained as follows:

> The restrictions imposed by attendance laws upon students and their parents are not analogous to the restraints of prisons and mental institutions. The custody is intermittent and the student returns home each day. Parents remain the primary source for the basic needs of the child.

*Id.* In reaching this conclusion, the Fifth Circuit quoted the rationale of the Supreme Court's decision in *Ingraham* to deny school children the protections of the Eighth Amendment:

> Though attendance may not always be voluntary, the public school remained an open institution. ***Except perhaps when very young***, the child is not physically restrained from leaving school during school hours . . . ."

*Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)) (emphasis added). Ultimately, the Fifth Circuit held that a "special relationship" did not exist between the school district and a thirteen-year-old student who was raped by a janitor. *Id.*

Although not raised by Plaintiff, the Court notes that neither the Supreme Court nor the Fifth Circuit has defined what is meant by the phrase "[e]xcept perhaps when very young." This ambiguity led Judge Alvarez of the Southern District of Texas to observe:

> This case law [regarding compulsory school attendance laws and the impact on custody for purposes of the special relationship theory], however, does not categorically foreclose Plaintiff's argument that custody arises out of compulsory school attendance in some circumstances.

*A. v. Laredo Independent School District*, No. 05-237, 2007 WL 189458, *3 (S.D. Tex. Jan 22, 2007) (Alvarez, J.). Citing the above-quoted passage from *Ingraham*, Judge Alvarez noted:

> The emphasized language represents a variable that ostensibly controls the inquiry – the given child's age . . . . "Except perhaps when very young" is a qualification that has not yet produced a bright line rule establishing the childhood age after which compulsory attendance ceases to equate with custody . . . . This obviously raises the question of whether [the seven year old student's] age converts his compulsory attendance into custody in light of the reality, implicitly recognized in *Ingraham*, that the "very" young children are not cognizant of their practical freedom to flee a dangerous environment or otherwise break boundaries and challenge authority.

*Id.*

In order to fully consider this argument raised by Judge Alvarez, the Court ordered that Plaintiff supply G.R.'s date of birth. (Rec. Doc. 9). In response, Plaintiff advised that G.R. was born on October 29, 1996. (Rec. Doc. 10). Therefore, G.R. was approximately ten years old in January 2007, when the first incident of sexual assault and/or molestation allegedly occurred.

The Court questions whether a ten year old qualifies as "very young" so as to fall within the possible ambiguity suggested by Judge Alvarez. Moreover, it is not clear whether the Fifth Circuit would consider age to be a variable in applying the "special relationship" exception. *See A v. Laredo Indep. Sch. Dist.*, 2007 WL 1904578, *4.

Regardless, the Court agrees that "a district court should be reluctant when addressing sensitive constitutional issues to read appellate decisions in an overly broad fashion." *Doe v. Sabine Parish School Board*, No. 97-1963, 24 F.Supp.2d 655, 664 (W.D. La. Oct. 27, 1998) (Stagg, J.).

8

The Court declines to extend the special relationship exception beyond the contours established by the Fifth Circuit.

> **B.     *State Created Danger Exception***

In *DeShaney*, the Supreme Court alluded to a second exception, a "state-created danger" exception.  Under the state-created danger theory, § 1983 liability arises when: (1) the defendant's actions created or increased the danger to the plaintiff; and (2) the defendant acted with deliberate indifference toward the plaintiff.  *Breen v. Texas A&M University*, 485 F.3d 325, 334-35 (5th Cir. 2007) (citing *Morin*, 309 F.3d 316, 321-322 (5th Cir. 2002); *McKinney*, 309 F.3d at 313).

However, the Fifth Circuit has yet to definitively recognize this exception to the *DeShaney* rule.  In 2006, the Fifth Circuit expressly stated that "neither the Supreme Court nor this court has either adopted the state-created danger theory or sustained a recovery on the basis thereof." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 422 (5th Cir. 2006).  Further, the court dispelled any confusion as to whether the court's prior decision in *Scanlon v. Texas A&M University* could be read as adopting the state-created danger theory.  *Id.* at 422-23.  Months later, in *Longoria v. Texas*, the Fifth Circuit noted that "[t]his circuit has never sustained a § 1983 claim predicated upon the state-created danger theory, and we decline to do so today."  473 F.3d 592 n. 8 (citing *Rios*, 444 F.3d at 422-23; *McClendon v. City of Columbia*, 305 F.3d 314, 329-33 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1232, 123 S.Ct. 1355, 155 L.Ed.2d 196 (2003); *Leffall*, 28 F.3d at 530-32).

Subsequently, the Court seemingly recognized the state-created danger theory in *Breen v. Texas A&M University*, a case which involved the Aggie bonfire disaster that resulted in the deaths of twelve university students and the injuries of twenty-seven others.  *Skeen v. Comal Indep. Sch.*

*Dist.*, 2008 WL 1930306, \*2 (W.D. Tex. Apr. 29, 2008) (Nowak, J.) (citing *Breen*, 485 F.3d at 329-30).  However, following that opinion, a majority of the panel voted *sua sponte* to grant rehearing, in part, and ultimately the Fifth Circuit withdrew the entire section discussing the state-created danger exception from its earlier opinion.  *See Breen v. Texas A&M Univ.*, 494 F.3d 516, 518 (5th Cir. 2007).  Consequently, as of this time, the Fifth Circuit has not officially adopted the state created danger theory.  Until the Fifth Circuit adopts the state created danger theory as a viable exception to *DeShaney* within this circuit, the Court cannot apply this exception to Plaintiff's section 1983 claims.

Absent a "special relationship" or a "state-created danger," the state has no constitutional obligation to protect, nor liability from failing to protect, a person under the due process clause of the Fourteenth Amendment from violations at the hands of a private actor.  *Walton*, 44 F.3d at 1306.  Plaintiff has not alleged any other theory for finding a constitutional violation.

### C.    *Plaintiff's claims against the Tangipahoa Parish School Board and School Board Employees*

Plaintiff asserts § 1983 claims against the Tangipahoa Parish School Board and school board employees, namely the principal and two teachers. A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.  *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).  A school board, as a municipal level board entity, can be held liable for § 1983 violations only as a result of an official policy or the decision of a person or entity with final policy making authority.  *Weathers v. School Bd of Lafayette Parish*, 2008 WL 2443644, \*1 (5th Cir. 2008) (not selected for publication) (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241 (5th Cir. 1994)).

Regarding the purported liability of the Tangipahoa Parish School Board and Principal Whitmer, Plaintiff alleges as follows:

31.     Prior to May 4, 2007, the Principal developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of the students at Natalbany Elementary School, which caused the violation of the rights of the minor children.

32.     It was the policy and/or custom of the Tangipahoa Parish School Board and/or Natalbany Elementary School to inadequately supervise and train its teachers, including the defendant teacher and other employees, thereby failing to adequately discourage further constitutional violations on the part of its teachers.

(Compl. ¶¶ 31-32).

Local governments and supervisory personnel are not subject to § 1983 liability under a vicarious liability or respondeat superior theory. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc).  Municipal liability requires proof of the following elements: (1) a policy maker; (2) an official policy[4]; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Independent Sch. Dist.*, 349 F.2d 244, 247 (5th Cir. 2003)

---

[4]To establish an "official policy," Plaintiff must allege either of the following:

1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or

2.     A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).  Absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under § 1983.  *Id.*

11

(citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  *See also Board of Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Thus, "without an underlying *constitutional* violation, there can be no § 1983 liability imposed on the school district or the individual supervisors." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) (emphasis in original).  The Supreme Court has stated that the "proper analysis requires us to separate two different issues when a section 1983 claim is asserted . . . (1) whether plaintiff's harm was caused by a constitutional violation, and (2) *if so*, whether the City is responsible for that violation." *Rios*, 444 F.3d at 426 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 1065-66, 117 L.Ed.2d 261 (1992)) (emphasis added by the Fifth Circuit).  Consequently, "without an underlying constitutional violation, an essential element of municipal liability is missing." *Becerra*, 105 F.3d at 1048.

The Fifth Circuit instructs that the court "'use the same standard in assessing an individual supervisor's liability under § 1983' as that used 'in assessing a municipality's liability' thereunder." *Rios*, 444 F.3d at 426 (quoting *Doe*, 15 F.3d at 453).

As explained by the Fifth Circuit, "the *Bryan County* rule [regarding municipal liability] does not detract from *DeShaney*'s general rule that municipalities have no duty to protect citizens from the private acts of fellow citizens." *Doe*, 113 F.3d at 1416.  Without a constitutional violation, Plaintiff cannot sustain a cause of action under § 1983 against these defendants.  As such, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted under § 1983.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss Pursuant to Federal Rule of Civil**

12

**Procedure 12(B)(6) for Failure to State a Claim on Which Relief May be Granted (Rec. Doc. 6)** filed by defendants, the Tangipahoa Parish School Board, Jo Ann Whitmer, in her individual and official capacity as principal of Natalbany Elementary School, and Crystal Clark and Sandra Moran, in their individual capacity and their official capacity as teachers at Natalbany Elementary School, is **GRANTED**.  Plaintiff's federal claims under 42 U.S.C. § 1983 are **DISMISSED**;

      **IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

July 28, 2008

                       JAY C. ZAINEY
              UNITED STATES DISTRICT JUDGE

13